# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JACOB A. CRUMPLEY,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 16-cv-02298-DDC-GLR** |
| **AWG WHOLESALE GROCERS, INC., and CLARENCE M. KELLEY AND ASSOCIATES, INC.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiff Jacob Crumpley has sued defendants Associated Wholesale Grocers, Inc. ("AWG") and Clarence M. Kelley and Associates, Inc. ("Kelley") under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, asserting two claims: unlawful termination and retaliation.

This matter comes before the court on AWG's Motion to Dismiss (Doc. 10). This motion asks the court to dismiss plaintiff's claims against AWG under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim. As explained below, the court grants AWG's Motion to Dismiss because plaintiff has not alleged facts, which, if true, could support a claim that AWG was his employer. But, if plaintiff can amend his Complaint to allege a sufficient factual basis to present a plausible claim against AWG under the standard announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), he may file an amended complaint no later than 21 days after the date of this Order.

1

I.     **Background**

Because AWG brings its Motion to Dismiss under Rule 12(b)(6), the court takes the controlling facts from plaintiff's Complaint and accepts them as true. *See S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014).

Plaintiff began working for Kelley, in March 2014 after responding to a Craigslist ad. Doc. 1-1 at 1; Doc. 1-2 at 1.[1]  This ad stated that Kelley was "hiring EMT/Security Guards (unarmed) to work at a Kansas City, KS business." *Id.*  That business was AWG.  As soon as Kelley hired plaintiff, he began working for AWG. *Id.* at 2.

Plaintiff worked for AWG until August 21, 2014—about five or six days after plaintiff suffered a seizure at work—when plaintiff's supervisor at Kelley, Jeff Harper, informed plaintiff that AWG no longer needed him.  Doc. 1 ¶ 26, at 4.  No one at AWG spoke with plaintiff about why he was fired.  And, from plaintiff's Complaint, it appears that plaintiff did not speak with anyone at AWG on or after August 21, 2014.

After he was fired, plaintiff asked Mr. Harper whether his seizure condition led to his dismissal from AWG.  Mr. Harper told plaintiff that he was dismissed from AWG because AWG "had requested changes and that [p]laintiff's job position was no longer needed." *Id.* ¶ 27.  However, before plaintiff had spoken with Mr. Harper, he had found the "exact same posting" for the AWG job on Craigslist that he had responded to back in March 2014. *Id.* ¶ 28.

Kelley never placed plaintiff in another position.  On September 11, 2014, Kelley released plaintiff, telling him to "return his uniform and pick up his final paycheck." *Id.* ¶ 32, at 5.  Plaintiff filed complaints against AWG and Kelley with the Kansas Human Rights

---

[1] This information comes from plaintiff's Kansas Human Rights Commission complaints against defendants. Because plaintiff incorporates his Human Rights Commission complaints into his Complaint by reference and attaches them to his Complaint, the court may consider the complaints here. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (stating that courts may consider "documents that the complaint incorporates by reference" in a Rule 12(b)(6) motion (citations omitted)).

Commission on October 17, 2014, alleging that they violated the ADA by firing him because of his seizure condition. *See* Doc. 1-1; Doc. 1-2. On March 3, 2016, the Kansas Human Rights Commission issued a Notice of Right to Sue and plaintiff filed his Complaint with our court seven days later. Doc. 1-3; Doc. 1-4; Doc. 1 at 1.

## II.     Legal Standard

Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

On a motion to dismiss like this one, the court assumes that a complaint's factual allegations are true, but need not accept mere legal conclusions as true. *Id.* at 1263. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to state a claim for relief. *Iqbal*, 556 U.S. at 678.

3

### III.    Analysis

AWG asks the court to dismiss plaintiff's claims under Rule 12(b)(6) for failing to state a claim.  Specifically, AWG contends that it never was plaintiff's employer, as the ADA defines and uses that term.

To state a claim under the ADA, plaintiff must allege that AWG was his employer.  *See Bristol v. Bd. of Cty. Comm'rs of Cty. of Clear Creek*, 312 F.3d 1213, 1217, 1221 (10th Cir. 2002).[2]  The Tenth Circuit uses three different tests to determine whether a defendant is an employer under the ADA:  (1) the hybrid test; (2) the joint-employer test; and (3) the single-employer test.  *Id.* at 1217–18; *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1225–26 (10th Cir. 2014).  Here, the Complaint never asserts that AWG was his sole employer.  Instead, it alleges that both AWG and Kelley were his employers.  This allegation makes only the joint-employer test applicable to plaintiff's claim here.  *See Knitter*, 758 F.3d at 1226 ("[T]he joint employer test, not the hybrid test, is the appropriate test to use when an employee of one entity seeks to hold another entity liable as an employer."  (citing *Bristol*, 312 F.3d at 1218)).

Under the joint-employer test, "a plaintiff who is the employee of one entity may seek to hold another entity liable by claiming that the two entities are joint employers."  *Bristol*, 312 F.3d at 1218.  This test "acknowledges that the two entities are separate, but looks to whether they co-determine the essential terms and conditions of employment."  *Id.* To hold both entities liable as joint employers, both must exercise significant control over the terms and conditions of a worker's employment.  *Knitter*, 758 F.3d at 1226.  To decide whether a defendant exercises

---

[2] The ADA defines *employer* in the same way that Title VII defines the term.  *Bristol*, 312 F.3d at 1217.  Because of similarities in both statutes' definitions, our Circuit frequently applies Title VII cases to similar terms and principles in cases brought under the ADA, and vice versa.  *See Knitter*, 758 F.3d at 1225 n.8 (noting that ADA cases considering whether an entity is an employer are instructive in the Title VII setting; *see also Bristol*, 312 F.3d at 1217–18 (relying on Title VII employment relationship tests and case law to determine whether an entity was an employer under the ADA).

significant control over a worker's employment, the court considers several factors:  (1) the right to terminate employment, (2) the ability to "promulgate work rules and assignments," (3) "day-to-day supervision of employees, including employee discipline," (4) control over compensation, benefits, and hours, and (5) "control of employee records, including payroll, insurance, taxes and the like."  *Id.* (quoting *Butterbaugh v. Chertoff*, 479 F. Supp. 2d 485, 491 (W.D. Pa. 2007)).  The most important factor, however, is the right to terminate employment.  *Id.*

Here, plaintiff has not alleged facts sufficient to support a plausible claim that AWG was his joint employer under these factors.

### A.    Factor One:  Right to Terminate Employment

In his Complaint, plaintiff does not allege that AWG had the right to terminate his employment.  Nor does he allege facts giving rise to a plausible inference that AWG had this right.  Plaintiff alleges only that "[o]n or about August 21, 2014, [he] was terminated from the job at [AWG] through Jeff Harper," an employee of Kelley who supervised plaintiff's work, Doc. 1 ¶ 25, at 4, and that the reason Mr. Harper gave for plaintiff's termination was that AWG "had requested changes and that [p]laintiff's job position was no longer needed."  *Id.* ¶ 27.

In his Reply, plaintiff argues that AWG's ability to request changes to its contract with Kelley supports the plausible inference that AWG had the right to terminate plaintiff's employment.  This argument stretches the inference beyond plausible limits.  At most, plaintiff's allegations could support an inference that AWG had the ability to ask Kelley to reassign plaintiff.  But AWG's ability to ask that Kelley no longer assign plaintiff to AWG does not mean that AWG had the right to terminate plaintiff.  *See Knitter*, 758 F.3d at 1229; *see also Banks v. St. Francis Health Ctr., Inc.*, No. 15-cv-2602-JAR, 2016 WL 1298056, at *3 (D. Kan. Mar. 31, 2016) (explaining that plaintiff's complaint did not allege that defendant had the right to

terminate her employment because "she was not terminated by [defendant] . . . rather, [the employment-agency] removed her from [defendant] and placed her elsewhere").

The Circuit's cases—such as *Knitter v. Corvias Military Living, LLC*—are instructive.  In *Knitter*, the Tenth Circuit found that a defendant did not have the right to terminate an employee of an employment agency who had been assigned to the defendant because the defendant was unaware that asking the employee to be reassigned would effectively require the employment agency to terminate the employee.  *Id.*  So, in *Knitter*, the Tenth Circuit focused the right-to-terminate inquiry on the right to terminate an employee from his position within the employment agency, not just from the employee's assignment.

Plaintiff's Complaint presents the same scenario as *Knitter*.  Plaintiff alleges facts sufficient to support a plausible claim that AWG had the authority to request reassignment, but does not allege facts sufficient to support the inference that AWG knew that asking Kelley to reassign plaintiff would lead to plaintiff's termination by Kelley.  Plaintiff thus has not alleged facts sufficient to support a plausible claim that AWG had the right to terminate him.  This first, and most important factor weighs in favor of dismissal.

### B.      Factor Two:  Work Rules and Assignments

Plaintiff never alleges that AWG gave him his work assignments or dictated the rules governing his work.  Indeed, plaintiff alleges his job duties, but he does not say where those duties came from—AWG or Kelley.  Doc. 1 ¶ 15, at 3.  Plaintiff argues that, because he worked at AWG's facility and not Kelley's, it is plausible to infer that AWG controlled plaintiff's work rules and assignments.  This inference comes closest to the plausibility mark.  Certainly, location would matter if it were coupled with factual allegations that plaintiff, for example, was integrated into AWG's operations there.  But the Complaint contains no such allegations.  It is plaintiff's

burden to allege facts that "nudge [his] claims across the line from conceivable to plausible." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1171 (10th Cir. 2015) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012)). At most, plaintiff's allegations support a conceivable inference that AWG controlled his work rules and assignments. But he has done no more. This second factor thus weighs in favor of dismissal, but just barely.

### C.    Factor Three:  Day-to-Day Supervision and Discipline

Plaintiff never alleges that AWG controlled his day-to-day supervision or discipline. His only allegations about these subjects do not support plaintiff's claim that AWG was his joint employer. For instance, plaintiff alleges that he "never received any write-ups or disciplinary actions through his employment with . . . Kelley or [AWG]." Doc. 1 ¶ 18, at 4. And throughout his Complaint plaintiff references "supervisors," though he never alleges whether those "supervisors" worked for AWG or Kelley. *See, e.g.*, *id.* ¶ 20. These allegations are not sufficient to support a plausible inference that AWG controlled plaintiff's supervision and discipline.

Again, plaintiff contends that working at AWG's facility gives rise to an inference that AWG supervised and disciplined him. But these contentions are speculative. The allegations in plaintiff's Complaint give rise to the plausible inference that he had multiple supervisors and that neither AWG nor Kelley disciplined him. But they do not give rise to a plausible inference that AWG could discipline him, or that AWG controlled his day-to-day supervision. The court cannot conclude that plaintiff has alleged facts sufficient to support such an inference when his Complaint lacks factual allegations about his day-to-day activities at AWG. This third factor thus weighs in favor of dismissal, albeit slightly.

### D.      Factors Four and Five:  Compensation, Benefits, Hours, and Control of Employee Records

The Complaint alleges nothing about plaintiff's benefits or employment records.  He does, however, allege that he called his supervisor at Kelley when he had questions about whether he would get more hours at AWG, and that he picked up his final paycheck from Kelley. Doc. 1 ¶¶ 24, 32, at 4–5.  These two allegations cannot support a plausible inference that *AWG* controlled plaintiff's compensation, benefits, hours, or employment records.  Indeed, the only inference they support is one contrary to what plaintiff needs—that Kelley controlled all of these things.  The court thus concludes that these final two factors favor dismissal.

### E.      Conclusion

In sum, all five factors recognized by our Circuit favor granting AWG's Motion to Dismiss.  The court thus concludes that AWG's Motion is well taken.

Plaintiff asks for leave to amend his Complaint so he can assert additional facts to support his claim that AWG also was his employer.  Given the early stage of this case, and because two of the five factors of the joint-employer analysis present close questions, the court: (1) grants AWG's Motion to Dismiss; but (2) gives plaintiff leave to amend his Complaint to state sufficient facts that, if true, could support a plausible inference that AWG was his employer.  If he fails to file such an amended complaint, plaintiff's claims against AWG will be dismissed.

**IT IS THEREFORE ORDERED THAT** AWG's Motion to Dismiss the current Complaint (Doc. 10) is granted, but plaintiff is granted leave to file an amended complaint no later than 21 days after the date of this Order.  If plaintiff does not file an amended complaint, his claims against defendant Associated Wholesale Grocers, Inc. shall be dismissed.

**IT IS SO ORDERED.**

**Dated this 8th day of November, 2016, at Topeka, Kansas.**

                           **s/ Daniel D. Crabtree**
                           **Daniel D. Crabtree**
                           **United States District Judge**