## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JACOB A. CRUMPLEY,

      **Plaintiff,**

v.

**ASSOCIATED WHOLESALE GROCERS,
INC., and CLARENCE M. KELLEY AND
ASSOCIATES, INC.,**

      **Defendants.**

**Case No. 16-cv-02298-DDC-GLR**

## MEMORANDUM AND ORDER

Broadly, this case is about whether defendants Clarence M. Kelley and Associates, Inc. ("Kelley") and Associated Wholesale Grocers, Inc. ("AWG") fired plaintiff because he has a seizure disorder—which plaintiff contends would violate the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* But, more immediately, this case has become a dispute over the question whether AWG was plaintiff's joint employer. AWG says it wasn't. Plaintiff says it was. If AWG is correct, then it cannot be liable under the ADA and can exit this litigation now. If plaintiff is correct, AWG stays in the case.

Trying to resolve this immediate dispute, AWG filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. Doc. 59. Plaintiff responded to the substance of AWG's Motion, but also filed a Motion for Extension of Time to Defer Ruling on Motion for Summary Judgment or, in the Alternative, for Leave to File Surreply. Doc. 69. In its Motion, AWG asks the court to dismiss the claims against it under either Federal Rule of Civil Procedure 12(b)(6) or 56. Rules 12(b)(6) and 56 require the court to use drastically different legal standards, so such hybrid motions are disfavored. Nonetheless, the court considers AWG's motion here.

Because plaintiff has filed a Rule 56(d) motion and the requisite affidavit, the court excludes, at first, matters outside the pleadings. By excluding these matters in the first phase of its analysis, the court can consider AWG's hybrid motion as one that really presents two separate motions: a motion to dismiss and a motion for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Thus, the court first considers AWG's motion to dismiss under Rule 12(b)(6). As explained below, the court denies that motion. The court then turns to plaintiff's motion under Rule 56(d) to defer ruling on the summary judgment aspect of AWG's motion. Because the court concludes that is should grant plaintiff's Rule 56(d) motion, it denies AWG's motion for summary judgment.

## I. AWG's Motion to Dismiss

### A. Background

Because AWG brings its motion to dismiss under Rule 12(b)(6), the court takes the following facts from plaintiff's First Amended Complaint and accepts them as true. *See S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014).

Plaintiff Jacob Crumpley began working for Kelley in March 2014 after responding to a Craigslist ad. Doc. 50 ¶¶ 13–14. This ad announced that Kelley was "hiring EMT/Security Guards (unarmed) to work at a Kansas City, KS business." Doc. 50-1 at 1.[1] That business was AWG. As soon as Kelley hired plaintiff, he began working for AWG in that role. *Id.* at 2; *see also* Doc. 50 ¶¶ 12–13.

---

[1] This information comes from plaintiff's Kansas Human Rights Commission complaints against defendants. Because plaintiff incorporates his Human Rights Commission complaints into his federal court Complaint by reference and attaches them to his Complaint, the court may consider the contents of the complaints on a motion like this one. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (stating that courts may consider "documents that the complaint incorporates by reference" in a Rule 12(b)(6) motion (citations omitted)).

Plaintiff worked for AWG until August 21, 2014—about two months after plaintiff suffered a seizure at work. Doc. 50 ¶¶ 12, 55. On August 21, 2014, plaintiff's supervisor at Kelley, Jeff Harper, informed plaintiff that AWG no longer needed him. *Id.* ¶¶ 12, 87, 90. No one at AWG spoke with plaintiff about why he was fired. And, from his First Amended Complaint, it appears that plaintiff did not speak with anyone at AWG on or after August 21, 2014.

After he was fired, plaintiff asked Mr. Harper whether his seizure condition led to his dismissal from AWG. Mr. Harper told plaintiff that he was dismissed from AWG because AWG "had requested 'changes' and that [p]laintiff's job position was no longer needed." *Id.* ¶ 90. Before plaintiff had spoken with Mr. Harper, however, he had found the "exact same posting" advertising the AWG job on Craigslist that he had responded to back in March 2014. *Id.* ¶ 92.

Kelley never placed plaintiff in another position. On September 11, 2014, Kelley terminated plaintiff, telling him to "return his uniform and pick up his final paycheck." *Id.* ¶ 99. Plaintiff filed complaints with the Kansas Human Rights Commission on October 17, 2014. Docs. 50-1, 50-2. They alleged that AWG and Kelley had violated the ADA by firing him because of his seizure condition. *See* Docs. 50-1, 50-2. On March 3, 2016, the Kansas Human Rights Commission issued a Notice of Right to Sue and plaintiff filed his original Complaint with our court seven days later, asserting two claims under the ADA: unlawful termination and retaliation. Doc. 50-3; Doc. 50-4; Doc. 1 at 1.

Then, on July 11, 2016, AWG filed a motion to dismiss plaintiff's Complaint under Rule 12(b)(6). In that motion, AWG argued that plaintiff had not alleged facts sufficient to hold AWG liable as his joint employer. The court agreed and granted its motion on November 8, 2016. Doc. 48. But the court also granted plaintiff leave to file an amended complaint. *Id.*

Plaintiff seized this opportunity and filed his First Amended Complaint on November 21, 2016. Doc. 50. Plaintiff's First Amended Complaint asserts the same two claims against AWG and Kelley, but adds many new factual allegations. Less than a month after plaintiff filed this Amended Complaint, AWG filed the Motion to Dismiss or, in the Alternative for Summary Judgment at issue here. Doc. 59.

### B.    Rule 12(b)(6) Motion to Dismiss Standard

Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

On a motion to dismiss like this one, the court assumes that a complaint's factual allegations are true, but need not accept mere legal conclusions as true. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to state a claim for relief. *Id.*

## C.     Analysis

AWG asks the court to dismiss plaintiff's claims under Rule 12(b)(6) for failing to state a claim. Specifically, AWG contends that plaintiff has failed to allege sufficient facts that, if accepted as true, support his claim that AWG was his employer, as the ADA defines and uses that term.

To state a claim under the ADA, plaintiff must allege that AWG was his employer. *See Bristol v. Bd. of Cty. Comm'rs of Cty. of Clear Creek*, 312 F.3d 1213, 1217, 1221 (10th Cir. 2002).[2] The Tenth Circuit uses three different tests to determine whether a defendant is an employer under the ADA: (1) the hybrid test; (2) the joint-employer test; and (3) the single-employer test. *Id.* at 1217–18; *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1225–26 (10th Cir. 2014). Here, plaintiff's First Amended Complaint never asserts that AWG was his sole employer. Instead, it alleges that both AWG and Kelley qualified as his employers. So, only the joint-employer test is germane to this case. *See Knitter*, 758 F.3d at 1226 ("[T]he joint employer test, not the hybrid test, is the appropriate test to use when an employee of one entity seeks to hold another entity liable as an employer." (citing *Bristol*, 312 F.3d at 1218)).

Under the joint-employer test, "a plaintiff who is the employee of one entity may seek to hold another entity liable by claiming that the two entities are joint employers." *Bristol*, 312 F.3d at 1218. This test "acknowledges that the two entities are separate, but looks to whether they co-determine the essential terms and conditions of employment." *Id.* To hold two entities liable as joint employers, each one must "exercise significant control" over the terms and

---

[2] The ADA defines *employer* in the same way that Title VII defines the term. *Bristol*, 312 F.3d at 1217. Because of similarities in both statutes' definitions, our Circuit frequently applies Title VII cases to similar terms and principles in cases brought under the ADA, and vice versa. *See Knitter*, 758 F.3d at 1225 n.8 (noting that ADA cases considering whether an entity is an employer are instructive in the Title VII setting; *see also Bristol*, 312 F.3d at 1217–18 (relying on Title VII employment relationship tests and case law to determine whether an entity was an employer under the ADA).

conditions of a worker's employment. *Knitter*, 758 F.3d at 1226 (citation omitted). To decide whether a defendant exercises significant control over a worker's employment, the court considers several factors: (1) the right to terminate employment, (2) the ability to "promulgate work rules and assignments," (3) "day-to-day supervision of employees, including employee discipline," (4) control over compensation, benefits, and hours, and (5) "control of employee records, including payroll, insurance, taxes and the like." *Id.* (quoting *Butterbaugh v. Chertoff*, 479 F. Supp. 2d 485, 491 (W.D. Pa. 2007)). The most important factor, however, is the right to terminate employment. *Id.*

Here, AWG contends that plaintiff has not alleged facts sufficient to support a plausible claim that AWG was his joint employer under these factors. The court considers each factor below, bearing in mind that the standard plaintiff must satisfy to survive AWG's motion to dismiss is low and requires no actual proof. Instead, the governing standard just requires plausible allegations.

### 1. Factor One: Right to Terminate Employment

In his First Amended Complaint, plaintiff alleges that AWG had "the power to terminate" him in one of two ways: "by 'refusing' to allow him to work for AWG, or by simply requesting Defendant Kelley terminate him." Doc. 50 ¶ 51. AWG contends that this allegation is not sufficient for two reasons: (1) because "AWG's right to request that [p]laintiff no longer work on its premises" is, legally, not the same as the right to terminate plaintiff's employment with Kelley; and (2) because plaintiff's allegation that AWG could ask Kelley to terminate him, "implicitly acknowledges that while AWG had the ability to request that Kelley no longer assign Plaintiff to work at its facility, only Kelley could terminate his employment." Doc. 60 at 17.

Although the court agrees with AWG that having the right to request plaintiff no longer be assigned to AWG is not the same as having the right to fire plaintiff,[3] the court is not persuaded by AWG's second argument.  Plaintiff has alleged that AWG could terminate his employment by "requesting Defendant Kelley terminate him."  Doc. 50 ¶ 51.  This allegation is not a legal conclusion, so the court must accept it as true.  This allegation thus provides a plausible basis for the court to infer that AWG had the right to terminate plaintiff's employment.  And, at the motion to dismiss stage, nothing more is required.  This first, and most important factor, thus counsels against dismissal.

### 2.    Factor Two:  Work Rules and Assignments

Plaintiff also alleges that AWG "gave [p]laintiff work assignments and dictated rules governing his work."  *Id.* ¶ 21.  AWG contends that this allegation is not sufficient because it is "conclusory" and does not support an inference "that AWG promulgated work rules or issued assignments beyond those expected of a contractual vendor/client relationship."  Doc. 60 at 19.  The court disagrees.

Although plaintiff's allegation that AWG controlled his assignments and dictated the rules he must follow seems somewhat conclusory, it is not a legal conclusion and so the court must accept it as true.  This allegation alone, then, likely is sufficient to allow the court to infer that AWG controlled the rules that governed plaintiff's employment and his work assignments.  But plaintiff also alleges specific facts that add additional support to his quasi-conclusory allegation.  These allegations include ones asserting that plaintiff worked only at AWG's facility and that "AWG determined when [p]laintiff would be trained on and assigned to a patrol position."  Doc. 50 ¶¶ 19, 31.  Plaintiff also alleges several examples of how AWG required him

---

[3] *See* Doc. 48 at 5–6 (explaining that the right-to-terminate inquiry focuses on the right to terminate employment, not to terminate an employee from his or her assignment).

to abide by AWG-specific rules. *See id.* ¶¶ 29, 33, 40–41. For instance, AWG required plaintiff to arrive at least "five minutes before his work shift." *Id.* ¶ 33. And, though Kelley provided plaintiff with a uniform, AWG required plaintiff to wear a belt. *Id.* ¶ 29. These allegations are sufficient to permit the court to infer that AWG controlled the rules governing plaintiff's employment and his work assignments. This second factor also counsels against dismissal.

### 3. *Factor Three: Day-to-Day Supervision and Discipline*

AWG contends that plaintiff fails to allege facts sufficient to support the third joint-employer factor because he never alleges "that AWG had the ability to formally evaluate [his] performance or discipline [him]." Doc. 60 at 22. But this is not quite so. Plaintiff alleges that "AWG's supervisory employees monitored [his] job performance" and "commented on [his] job performance." Doc. 50 ¶¶ 35, 37. Plaintiff also alleges that one of AWG's employees, Mark Hulett, "acknowledged he was [p]laintiff's supervisor" when Mr. Hulett filled out a form after plaintiff's seizure and listed himself as plaintiff's "supervisor" in response to the form's question asking what Mr. Hulett's relationship was to the patient—here, plaintiff. *Id.* ¶¶ 58–59. So, plaintiff has alleged facts sufficient to support an inference that AWG employees supervised plaintiff's day-to-day activities.

Plaintiff does not allege that AWG had the ability to discipline him formally. But the court is willing to overlook this possible shortcoming because plaintiff's First Amended Complaint provides a reasonable explanation for it: Neither AWG nor Kelley ever formally disciplined plaintiff. *Id.* ¶ 54. This third factor thus counsels against dismissal.

### 4. *Factors Four and Five: Compensation, Benefits, Hours, and Control of Employee Records*

Like his original Complaint, plaintiff's First Amended Complaint lacks any allegations about plaintiff's benefits or employment records. Doc. 48 at 8. So, plaintiff fails to allege any

facts to support the fifth joint-employer factor.  Plaintiff, however, does allege one fact

supporting the fourth factor:  AWG "had the ability to, and on at least one occasion did, assign

[p]laintiff's specific work hours."  Doc. 50 ¶ 31.  In contrast, plaintiff does not allege that AWG

controlled his compensation or benefits.  *See id.* ¶¶ 42, 44 (alleging that Kelley controlled his

compensation and issued his paychecks).  The court thus considers the fourth factor as something

of a wash—weighing in favor of dismissal, but just slightly.

> 5.     *Conclusion*

In sum, three of the five joint-employer factors recognized by our Circuit counsel against

dismissal.  Given the importance and strength of these three factors, the court concludes that

plaintiff has alleged sufficient facts to support an inference that AWG was his joint employer.

The court thus denies AWG's motion to dismiss, and now moves on to consider plaintiff's

Motion for Extension of Time to Defer Ruling.  *See Wilson v. Vill. of Los Lunas*, 572 F. App'x

635, 639 (10th Cir. 2014) (noting that, usually, "a district court should decide a Rule 56(d)

request before deciding summary judgment" (citations omitted)).

## II.     Plaintiff's Rule 56(d) Motion and Affidavit

In his Motion for Extension of Time to Defer Ruling ("Rule 56(d) Motion"), plaintiff

invokes Rule 56(d), which allows a court to "(1) defer considering the motion or deny it; (2)

allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other

appropriate order"[4] when a party shows by affidavit that it cannot present facts essential to

justify its opposition.  Fed. R. Civ. P. 56(d).  AWG opposes plaintiff's Rule 56(d) motion,

contending that the court should not even consider the Rule 56(d) motion because it is untimely

---

[4]  "When Rule 56 was rewritten in 2010, the provisions in Rule 56(f) were moved to a new subdivision
(d), without any substantial changes."  10B Charles Alan Wright et al., *Federal Practice and Procedure* §
2740 (3d ed. 2015).  Cases referencing the pre-2010 version of the rule cite subsection (f).

and that, should the court consider the motion, plaintiff has failed to carry his burden under Rule 56(d).

The Tenth Circuit does not impose a high burden on a party seeking relief under Rule 56(d). Instead, our Circuit has made it clear that, "[u]nless dilatory or lacking in merit, [a Rule 56(d)] motion should be liberally treated." *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554 (10th Cir. 1993) (citations omitted). As such, the Circuit imposes just four requirements on a party trying to secure relief under Rule 56(d): a party "must specify (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [him] to obtain those facts and rebut the motion for summary judgment." *Gutierrez v. Cobos*, 841 F.3d 895, 908 (10th Cir. 2016) (quoting *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015)). As a shorthand, the court calls these four factors "the *Gutierrez* factors," though it recognizes that they predate that case.

Whether to grant a Rule 56(d) motion that addresses these *Gutierrez* factors is left to the court's discretion, but if the party filing the motion "has been dilatory" or "the information sought is either irrelevant to the summary judgment motion or merely cumulative, no extension will be granted." *Jensen*, 998 F.2d at 1554 (citing *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264–65 (10th Cir. 1984)).

Here, AWG argues that plaintiff has not addressed or satisfied the *Gutierrez* factors, was dilatory in filing his Rule 56(d) Motion, and seeks to discover irrelevant information. Given these arguments, the court first considers whether plaintiff has addressed the four *Gutierrez* factors, then considers whether any reason exists to deny his motion.

## A.    The *Gutierrez* Factors

Plaintiff's Rule 56(d) Motion and Affidavit sufficiently address all four *Gutierrez* factors. In his Motion, plaintiff explains that many of the facts he wishes to rely on to oppose summary judgment come from AWG's and Kelley's initial Rule 26 disclosures.  Plaintiff also explains that he does not yet possess those facts and documents in a format that makes them admissible at summary judgment because he has not been able to make them admissible by deposing AWG or Kelley employees.  *See Powers v. Tweco Prods., Inc.*, 206 F. Supp. 2d 1097, 1103 (D. Kan. 2002) ("The parties need not present evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible. . . . [So,] the court may disregard facts supported only by references to documents unless the parties have stipulated to the admissibility of the documents or the documents have been authenticated by and attached to an affidavit meeting the requirements of Rule 56(e)."  (citations omitted)).  In his Rule 56(d) Affidavit, plaintiff's attorney, Katherine Myers, testifies to this fact, explaining that, so far, the parties have engaged in only written discovery.  Doc. 70-1 ¶¶ 5–6.  She also testifies that plaintiff needs more time for discovery to "obtain additional evidence . . . responsive to Defendant AWG's Motion for Summary Judgment."  *Id.* ¶ 6.  She explains that documents defendants have produced already suggest that plaintiff, with further discovery, is likely to discover the following facts:

- AWG and Kelley produced writings that altered the Agreement between them, which dictates the relationship that the two entities have with staff supplied to AWG by Kelley;

- AWG employees "believed they had the power to terminate [p]laintiff's employment";

- Kelley would terminate plaintiff's employment if AWG asked it to do so; and

- AWG provided plaintiff with training materials and "work rules . . . that governed [p]laintiff's employment."

*Id.* ¶¶ 11–13, 16. Ms. Myers also explains that additional discovery would permit plaintiff to develop facts about AWG and Kelley's relationship, the veracity of documents that AWG relies on in its motion for summary judgment, the role AWG played in plaintiff's hiring, and "the degree of supervision over [p]laintiff provided by Defendant AWG's employees, including Amber Morlan and Jerry Burke." *Id.* ¶ 15; *id.* ¶¶ 8, 10, 14.

Although these last few facts are not ones that lend themselves to a concise list like those noted in the bullet points above, they are, by and large, sufficiently specific. *See Gutierrez*, 841 F.3d at 908–09 (affirming district court's decision to deny a Rule 56(d) motion because, in part, the motion's request was "'wide-ranging' and failed to focus on the critical issues for summary judgment"). From plaintiff's Rule 56(d) Motion, the court understands that he believes that further discovery will show that AWG employees supervised him and that AWG had a hand in hiring him. And, although plaintiff's request for additional discovery to develop facts about AWG and Kelley's relationship and to establish the veracity of the documents that AWG relies on in its motion for summary judgment appears broad, the request is not overly broad.

Finally, plaintiff's Motion links all of the facts he seeks to different factors used by the joint-employer test and his procedural ability to oppose AWG's motion for summary judgment. Plaintiff thus has addressed all four *Gutierrez* factors.

Still, AWG contends that plaintiff fails to address the first and fourth *Gutierrez* factors sufficiently because: (1) plaintiff fails to explain how the existence of the facts he seeks is probable and not simply speculative; (2) AWG's summary-judgment evidence precludes the existence of many of the facts plaintiff seeks; and (3) plaintiff fails to explain how the facts he seeks are essential to justifying his opposition of AWG's motion for summary judgment. The court considers all three arguments, separately, below.

*1.      Is the Existence of the Facts Plaintiff Seeks Speculative?*

AWG contends that plaintiff has failed to address the first *Gutierrez* factor sufficiently because the existence of the facts he seeks to find through additional discovery is speculative. Doc. 77 at 6–8.  Put more plainly, AWG contends that plaintiff fails to explain "the reasons why he believes he is 'likely' to discover" the "probable facts" recited in his Rule 56(d) Motion and Affidavit.  *Id.* at 6.  But "likely" is not the standard under the first *Gutierrez* factor.

A party's Rule 56(d) affidavit is not improperly speculative simply because the party cannot prove, definitively, the existence of the facts sought.  *See* Steven Gensler, *Federal Rules of Civil Procedure: Rules and Commentary* Rule 56, Westlaw (Feb. 2017) (explaining that, so long as a party offers "some basis other than a speculative hope that the intended sources might reveal helpful information," "[a] party does not need to prove in advance that the facts exist" (footnote 148 omitted)); *see also Mid-Am. Pipeline Co. v. Lario Enters., Inc.*, No. 88-4205-S, 1989 WL 35984, at *1 (D. Kan. Mar. 17, 1989) (granting Rule 56(d) motion so that the non-movant had "the opportunity to conduct discovery sufficient to determine whether genuine issues of material fact exist").  But, at the same time, "a litigant's unsupported averments cannot justify deferring a ruling on—let alone denying altogether—a motion for summary judgment."  *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1208 (10th Cir. 2015) (first citing *Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 537 (10th Cir. 1987); then citing *Culver v. Town of Torrington*, 930 F.2d 1456, 1458–59 (10th Cir. 1991)).  All that is required is that the party seeking relief must provide some basis for the court to believe the existence of the facts sought is "probable."  *See Gutierrez*, 841 F.3d at 908 ("[A] non-movant requesting additional discovery under Rule 56(d) 'must specify (1) the *probable* facts not available . . . .'"  (emphasis added) (citations omitted)).[5]

---

[5] The court recognizes that other circuits have adopted a standard-of-proof of sorts for Rule 56(d) motions.  For instance, the First Circuit requires Rule 56(d) movants to "set forth a plausible basis for believing that the necessary

Here, plaintiff bases his request for additional discovery, in part, on documents defendants have produced during written discovery—constituting defendants' initial Rule 26 disclosures and responses to plaintiff's initial interrogatories and first request for production. Docs. 70, 70-1. Plaintiff bases the rest of his request on the need to conduct depositions to determine the extent of things already known, *e.g.*, the degree to which AWG employees supervised him and the nature of AWG and Kelley's working relationship, and to convert facts already known into an admissible format. The court finds these reasons sufficient to show that the existence of the facts plaintiff seeks is, at least, probable.

AWG argues that one of plaintiff's probable facts "does not provide the basis for his belief that written modifications exist" to the agreement between AWG and Kelley, "other than the contract language itself." Doc. 77 at 7. This is not quite so. Plaintiff relies on the language of the contract itself, which allows variances to its terms, but he also relies on "other documents produced in discovery [that] suggest [d]efendants significantly changed the nature and extent of . . . AWG's control over [p]laintiff's work." Doc. 84 at 8. Plaintiff directs the discussion to one document in particular—an email from AWG telling Kelley not to fire plaintiff. *Id.*; *see also* Doc. 70 at 7. So, plaintiff has provided some basis for the court to conclude that some variance to the agreement between AWG and Kelley probably exists.

Plaintiff has thus satisfied the first *Gutierrez* factor.

### 2. Effect of AWG's Summary-Judgment Evidence

Much of AWG's opposition to plaintiff's Rule 56(d) motion relies on the argument that AWG's summary-judgment evidence contradicts the facts that plaintiff seeks to discover. Doc. 77 at 7–8. And so, AWG argues, the court must deny plaintiff's motion. *Id.* AWG cites no

---

facts probably exist." *Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 127 (1st Cir. 2006) (citations omitted)). But the Tenth Circuit does not seem to have done so, and the Tenth Circuit uses an altogether different Rule 56(d) test than the First Circuit and others that have adopted similar standards of proof.

authority suggesting that a court should consider a summary-judgment movant's evidence when determining whether to grant relief to the non-movant under Rule 56(d), and the court has found no such authority. AWG's unsupported argument thus is not persuasive under any *Gutierrez* factor.

### 3. Are the Facts Plaintiff Seeks to Discover Essential to His Opposition?

AWG contends that plaintiff has failed to address or satisfy the fourth *Gutierrez* factor. Trying to support this contention, AWG advances two arguments: (1) because plaintiff responded to its motion for summary judgment, the facts he seeks are not essential to his opposition; and (2) plaintiff fails to explain how one of the facts he seeks is relevant to the joint-employer question posed by AWG's motion for summary judgment. Because these two arguments are quite different from one another, the court considers them separately.

### a. Effect of Plaintiff's Response to AWG's Motion for Summary Judgment

AWG asserts that, because plaintiff "has already fully responded to" its motion for summary judgment, he "cannot now argue that he requires additional discovery to respond to" that motion. Doc. 77 at 4. But if such a bright-line rule exists, AWG has not cited it. Nor can the court find a rule that prohibits a district court from granting a Rule 56(d) motion that is filed after a plaintiff responds to the defendant's summary judgment motion. *But see Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 833 (10th Cir. 1986) (stating, in dicta, that "[t]he protection afforded by Rule 56(f) is an *alternative* to a response in opposition to summary judgment under 56(e) and is designed to safeguard against a premature or improvident grant of summary judgment" after noting that the plaintiff "did in fact respond to the motion for summary judgment with a brief and exhibits," but not resting its abuse-of-discretion holding on this fact (citing 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2740 (1983))). Instead,

AWG cites two cases that support the proposition that a district court *may* deny a Rule 56(d) motion because it is filed after a response: *Gutierrez v. Cobos* and *Adams v. Allstate Insurance Co.*, 187 F. Supp. 2d 1207 (C.D. Cal. 2002).

In *Gutierrez v. Cobos*, the Tenth Circuit held that a district court did not abuse its discretion when it denied a Rule 56(d) motion. 841 F.3d at 909. There, the plaintiffs' Rule 56(d) motion came "more than three months after they had filed [a] factually detailed response opposing summary judgment." *Id.* at 908. "Given the timing, the [district] court questioned whether [the] [p]laintiffs' requested discovery was essential to their ability to respond." *Id.* And, when it affirmed the district court's decision, the Tenth Circuit noted that the denied Rule 56(d) motion was the plaintiffs' "fourth motion for discovery." *Id.* at 909.

In *Adams v. Allstate Insurance Co.*, the Central District of California denied the plaintiffs' Rule 56(d) motion because they failed to address that court's Rule 56(d) factors and because the court believed the plaintiffs' "detailed and thorough opposition to" the pending motion for summary judgment "belie[d] the assertion that they [could not] defend against it." 187 F. Supp. 2d at 1213–14.

The court finds neither *Gutierrez* nor *Adams* dispositive here. First, neither case provides much detail about the Rule 56(d) motions nor affidavits at issue in those cases, so the court cannot determine whether those cases are similar to this one. Second, unlike *Gutierrez*, plaintiff's Rule 56(d) motion here is his first motion seeking discovery to respond to a summary judgment motion's substance. Third, plaintiff filed his motion only 24 days after his Response and 10 days after AWG's Reply, so the delay here is much shorter than the delay in *Gutierrez*. Docs. 65, 67, 69. This minimizes the court's skepticism that plaintiff's motion is just a stalling ploy. Fourth, unlike *Adams*, plaintiff's Motion and Affidavit address the *Gutierrez* factors, and

they do so satisfactorily. And last, unlike both *Gutierrez* and *Adams*, that plaintiff filed a response to AWG's motion for summary judgment before filing his Rule 56(d) Motion here does not belie plaintiff's assertion that the discovery he requests is essential.

Plaintiff has responded to AWG's motion for summary judgment and then realized—thanks to AWG's Reply—that the evidence he had relied on was not yet admissible. To make this evidence admissible, however, plaintiff must depose AWG and/or Kelley employees. He has not yet had an opportunity to do so—the parties are still in the written discovery phase of litigation. Although this court's rules are clear—at summary judgment, "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein" [6]—the court sees nothing disingenuous, frivolous, or dilatory about plaintiff's failure to file his Rule 56(d) Motion before filing his Response to AWG's motion for summary judgment.

Also, plaintiff's delayed filing does not change the fact that the facts he seeks time to secure are essential to justify his opposition to AWG's summary judgment motion. Without time to conduct more discovery, plaintiff cannot obtain the deposition testimony necessary to make many—if not most—of the facts relied on in his Response admissible. So, AWG's reliance on *Gutierrez* and *Adams*, though understandable, does not alter the court's conviction that plaintiff has satisfied the fourth *Gutierrez* factor.

> **b.** Is the Subject Belief of an AWG Employee Essential to Plaintiff's Opposition to AWG's Motion for Summary Judgment?

AWG next contends that plaintiff failed to satisfy *Gutierrez*'s fourth factor because he has failed to "explain how discovery on a person's subjective belief would assist him in establishing that AWG had the power to *actually* terminate [p]laintiff's employment with Kelley." Doc. 77 at 7. In other words, AWG contends that its employees' subjective beliefs

---

[6] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)).

about its power to terminate plaintiff are irrelevant to the joint-employer analysis, and so the court should deny plaintiff's Rule 56(d) motion.

AWG is correct that Mr. Crumpley, as the party seeking more time for discovery, must show that the new discovery he seeks could alter the outcome of AWG's motion for summary judgment. *See United States v. Supreme Court of N.M.*, 839 F.3d 888, 905–06 (10th Cir. 2016) (affirming district court's denial of a plaintiff's Rule 56(d) motion when the facts the plaintiff sought, "even if established, would not have affected the district court's central legal conclusion"); *accord* Gensler, *supra*, at Rule 56. Otherwise, the facts plaintiff wishes to secure are not essential to justify his opposition to AWG's motion. *Supreme Court of N.M.*, 839 F.3d at 905–06. But the court disagrees with AWG's evaluation of plaintiff's Motion and Affidavit.

To support his request for discovery to determine whether AWG's employees believed they had the power to terminate plaintiff's employment with Kelley, plaintiff cites *Knitter v. Corvias Military Living, LLC*. Doc. 70 at 7–8. In that case, the Tenth Circuit noted several facts that led it to conclude that the defendant did not have the right to terminate the plaintiff. 758 F.3d at 1229. At least two of those facts involved the defendant's subjective belief: (1) the defendant's "managers repeatedly testified they did not believe they had the power to fire vendor handymen" and (2) no record evidence suggested that the defendant knew that its request to reassign the plaintiff would require the placement agency to fire her. *Id.* at 1228–29. So, *Knitter* suggests that a defendant's subjective belief in its ability to terminate an employee can be relevant to the court's joint-employer analysis. The court acknowledges, however, that *Knitter* noting these facts in its analysis does not make a defendant's subjective belief in its right to terminate an employee required or even dispositive under the joint-employer test. The court thus

concludes that AWG's subjective belief of its right to terminate plaintiff may inform plaintiff's opposition to AWG's motion for summary judgment.

As for the remaining facts plaintiff seeks, the court concludes that they too are essential to justifying his opposition to AWG's motion. For instance, if plaintiff cannot take depositions to make the facts he already possesses admissible, he cannot justify opposing summary judgment. Also, the joint-employer test is highly fact-specific, and the facts plaintiff seeks likely are essential to proving plaintiff's contention that AWG was, in fact, his joint employer. Because plaintiff has shown that the facts he seeks are essential to justifying his opposition to AWG's Motion for Summary Judgment, he has satisfied the fourth *Gutierrez* factor.

In sum, the court finds that plaintiff's Rule 56(d) Motion and Affidavit address and satisfy all four *Gutierrez* factors. It remains to be seen, however, whether some reason exists for the court to deny plaintiff's motion.

### B.      Whether to Grant or Deny Plaintiff's Rule 56(d) Motion

The court is inclined to grant plaintiff's Rule 56(d) Motion. Plaintiff has addressed and satisfied the *Gutierrez* factors, and the court believes that plaintiff is entitled to more discovery before it rules on AWG's motion for summary judgment. Indeed, plaintiff reports that the parties were in the early stages of discovery when AWG filed its motion for summary judgment. AWG served plaintiff with its initial Rule 26 disclosures on October 7, 2016. Doc. 28. Then, about a month and a half later, plaintiff served AWG and Kelley with his first set of interrogatories and first request for production. Doc. 52. AWG filed its Motion for Summary Judgment on December 15, 2016, which made plaintiff's response due by January 5, 2017. Doc. 59; Fed. R. Civ. P. 6; D. Kan. R. 6.1. AWG did not respond to plaintiff's first request for production and initial interrogatories until December 27, 2016—that is, about nine days before

plaintiff's response to AWG's Motion for Summary Judgment was due. Doc. 62. And plaintiff did not receive Kelley's response to his first request for production or initial interrogatories until January 2, 2017—two days before his response was due. Doc. 64. Neither AWG nor plaintiff has scheduled or conducted a deposition in this case.

The court thus is concerned that the parties have not developed a record sufficiently robust for the court to decide the important joint-employer question presented by AWG's motion for summary judgment. *Cf. Mid-Am. Pipeline Co.*, 1989 WL 35984, at *1 (granting Rule 56(d) motion because "summary judgment [was] premature at [the] time" based on the limited time for discovery). And, based on the timing of this case, plaintiff has acted diligently in his attempts to discover the facts referenced by his Motion and Affidavit. The court acknowledges, however, that AWG's argument that plaintiff could have testified via affidavit to the authenticity of any training documents he received from AWG and wished to rely on at summary judgment is well taken. *Cf. Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (denying Rule 56(d) motion, in part, because the parties seeking relief failed to explain why they didn't already possess evidence about their relationship with their previous attorneys). But, the court does not view this omission as serious enough to negate the rest of his Rule 56(d) motion. And the court still believes that the parties have not yet developed a sufficient record for the court to decide the joint-employer issue.

The court also recognizes that plaintiff's failure to file his Rule 56(d) Motion until 24 days after responding to AWG's motion—and 10 days after AWG filed its Reply to his Response—weighs against his position in that motion. But, again, the court sees nothing disingenuous, frivolous, or dilatory in this delay. So, after carefully considering AWG's arguments, the court grants plaintiff's Rule 56(d) motion. Rule 1 requires the court to apply the

Federal Rules of Civil Procedure in a way that secures "the just, speedy, and inexpensive determination of every action and proceeding." *See* Doc. 77 at 9 n.4 (arguing that granting plaintiff's Rule 56(d) motion "would not be consistent with the mandate" of Rule 1). But the court's first duty under Rule 1 is to ensure the just determination of every action. To decide AWG's motion for summary judgment on an insufficient record would betray this duty. *Cf. Mid-Am. Pipeline Co.*, 1989 WL 35984, at *1 (granting Rule 56(d) motion despite "recognize[ing] the importance of moving th[e] case along to a speedy resolution").

The court thus grants plaintiff's Rule 56(d) motion and denies AWG's motion for summary judgment. But it does so without prejudice to AWG refiling such a motion. *See* Miller et al., *supra*, § 2740 (when granting a Rule 56(d) request, "the usual practice is to deny summary judgment without prejudice to the right to reapply at a later date"); Fed. R. Civ. P. 56(d)(1).

**IT IS THEREFORE ORDERED THAT** AWG's Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 59) is denied, but AWG's Motion for Summary Judgment is denied without prejudice.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Extension of Time to Defer Ruling on Motion for Summary Judgment or, in the Alternative, for Leave to File Surreply (Doc. 69) is granted in part and denied in part. Plaintiff's motion under Rule 56(d) is granted, but his motion for leave to file a surreply is denied as moot.

**IT IS FURTHER ORDERED THAT,** if AWG chooses to renew its motion for summary judgment, it must do so within the time frame established by the Scheduling Order (Doc. 47).

**IT IS SO ORDERED.**

Dated this 13th day of April, 2017, at Topeka, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge